UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------x
UNITED STATES OF AMERICA,          :
                                   :      17-CR-283 (LAP)
        -v.-                       :
                                   :      MEMORANDUM
                                   :      & ORDER
OVED VEGA,                         :
                                   :
             Defendant.            :
----------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Oved Vega's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (dkt. no. 573), the Government's opposition (dkt. no. 606), and Defendant's subsequent papers (dkt. nos. 600, 610).  For the reasons set out below, Defendant's motion is denied.

## I.   Background

### a. Offense Conduct

From at least 2012 until the May 2017 arrests in this case, a violent drug trafficking organization, referred to here as the "Davidson Avenue DTO" or simply the "DTO," operated on Davidson Avenue between West Tremont Avenue and West Burnside Avenue in the Bronx, New York (the "Davidson Block").  (See dkt. no. 333 at 6.) The DTO sold significant quantities of heroin, crack cocaine, powder cocaine, and marijuana, generating substantial profits for its leaders and significant sums for its members.  (See id.)  To prevent other drug-traffickers from selling on their territory,

1

DTO members used violence and the threat of violence.  (See id.)
Members kept guns on their person or hidden nearby and engaged in
shootings and assaults toward this end.  (See id. at 6-7.)

Defendant was the leader of the violent drug crew.  (See id.
at 6.)  He oversaw the activities of the Davidson DTO, and he
directed the actions of its members.  (See id.)  Many of the drug
dealers working for Defendant were members of the Wild Card Crips,
a violent street gang responsible for a number of shootings in the
area.  (See id. at 7.)  And while Defendant himself was not in the
gang, he benefited from the fact that his workers would protect
his drug turf and retaliate against rivals when necessary.  (See
id. at 6; see also dkt. no. 331 at 2.)  Defendant—like his workers—
also possessed firearms.  In fact, in 2014, he presented one of
his workers with an AR-15 assault rifle for that worker's birthday.
(See dkt no. 333 at 6.)

As the leader of the DTO, Defendant stipulated that he was
responsible for distributing at least one kilogram of heroin and
that he possessed firearms in furtherance of the offense.  (See
dkt. no. 331 at 2.)

### b. Procedural History

On August 12, 2019, the Defendant pled guilty, pursuant to a
plea agreement, to one count of conspiring to distribute one
kilogram or more of heroin and 280 grams or more of crack.  (See
dkt. no. 301 at 20-21.)  The plea agreement stipulated to a

Guidelines Range of 135 to 168 months imprisonment.  (See id. at 10.)

At sentencing on December 11, 2019, the Government sought a sentence within the stipulated Guidelines range of 135 to 168 months imprisonment.   (See dkt. no. 331 at 1.)   The Court ultimately imposed a below-Guidelines sentence of 120 months, which was the mandatory minimum.  (See dkt. no. 339 at 25-26.)  In imposing this sentence, the Court stated that "this was an exceedingly serious crime and had terrible consequences for the people involved and for the neighborhood."  (Id. at 23.)  Because of this, "there is certainly a need here for a serous sentence to reflect the seriousness of the offense, and I don't think there is anyone who disagrees with that."   (Id.)   The Court also acknowledged "that Mr. Vega had opportunities in his life" to turn his life around, including after an "early weapons offense."  (Id.) And the Court stated that a serious sentence was "necessary in order to deter others from undertaking this type of offense," because "[w]e see so many people in this courthouse who come from similar backgrounds who take this path.  It is necessary to have a serious sentence in order to deter them from doing that."  (Id. at 23-24.)   Against this, the Court weighed the fact that the Defendant had done well while incarcerated and had stated that he understood the gravity of his crimes and the need to take care of his son.  (Id.)

The Defendant's current projected release date is September 30, 2025.  (See dkt. no. 606 at 2.)

### c. Instant Motion

On or about March 23, 2023, the Defendant submitted a pro se motion for compassionate release.  (Dkt. no. 573.)  The Defendant did not indicate in his motion whether he had first made an administrative application to the Bureau of Prisons, and the Government reports that the Bureau of Prisons was unable to locate a record of the Defendant making such an application.  (See dkt. no. 606 at 2.)

## II.  **Applicable Law**

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed except that":

> [T]he court, upon motion of the Director of the Bureau of Prisons [(the "BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Phillibert, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2020). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction.

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of Appeals

explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long.

See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements.  See 18 U.S.C. § 3582(c)(1)(A)(i).  The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582.  See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing Butler, 970 F.2d at 1026); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable § 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons."  United States v. Giattino, No. 23-6918-cr,

7

2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order)

(citing United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021)

(per curiam)); see also United States v. Ramirez, 571 F. Supp. 3d

40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate

release where the § 3553(a) factors override, in any particular

case, what would otherwise be extraordinary and compelling

circumstances.").

The statute also "sets out a fourth requirement: that the

'reduction is consistent with applicable policy statements issued

by the Sentencing Commission.'" Keitt, 21 F.4th at 71 n.2 (quoting

18 U.S.C. § 3582(c)(1)(A)).  The relevant Sentencing Guidelines

policy statement, U.S.S.G. § 1B1.13, sets forth requirements that

must be met before a court can reduce a sentence.  See 18 U.S.C.

§ 3582(c)(1)(A).  As relevant here, section 1B1.13(b)(6) provides

as follows:

> If a defendant received an unusually long sentence and
> has served at least 10 years of the term of imprisonment,
> a change in the law . . . may be considered in
> determining whether the defendant presents an
> extraordinary and compelling reason, but only where such
> change would produce a gross disparity between the
> sentence being served and the sentence likely to be
> imposed at the time the motion is filed, and after full
> consideration of the defendant's individualized
> circumstances.

U.S.S.G. § 1B1.13(b)(6).

The defendant bears the burden of proving that he is entitled

to the requested relief under Section 3582(c)(1)(A).  See United

States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992); accord United

States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021).

### III. Discussion

#### a. Exhaustion of Administrative Remedies

Where a motion under 18 U.S.C. § 3582(c)(1)(A)(i) is made by

a defendant, the defendant must first have "fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons

to bring a motion on the defendant's behalf or the lapse of 30

days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier."    18 U.S.C.

§ 3582(c)(1)(A).  The Government argues that Vega has not met his

burden of showing he first made an administrative application to

his Warden.  (Dkt. no. 606 at 4.)  In reply, Defendant argues he

did exhaust his administrative remedies, attaching a letter from

a Warden dated April 13, 2023 denying his request for compassionate

release or a reduction in his sentence based on non-medical

circumstances for failure to meet the appropriate criteria.  (Dkt.

no. 610, Ex. A.)   Specifically, the letter indicates that

Defendant's request was based on his intention to provide care for

certain family members, but their identities are undisclosed.  (See

id.)  Defendant's instant motion is based on the circumstances of

two family members, his father and his minor son.  (See dkt. no.

573 at 1.)

Courts in this district have not been of one mind as to whether Section 3582(c)(1)(A) requires a defendant to exhaust administrative remedies with respect to each issue raised in a motion for compassionate release, e.g., United States v. Gunn, No. 06 Cr. 911, 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022). Here, Defendant's attempt to exhaust his administrative remedies appears to have raised similar issues to those raised in his current motion.  Nevertheless, Court adopts Judge Sidney H. Stein's well-reasoned analysis in United States v. Torres, 464 F. Supp. 3d 651, 655-56 (S.D.N.Y. 2020) and concludes that even assuming Defendant did not raise the same issues, issue exhaustion is not required.  Accordingly, the Court concludes that Defendant has exhausted his administrative remedies.

### b. Extraordinary and Compelling Reasons

Defendant bases his motion on the circumstances of two family members, his father and his minor son.  (See dkt. no. 573 at 1.) His father is in the final stages of a multi-year battle with Alzheimer's Disease.  (See id.)  His father has been, and continues to be, under the care of a nursing home facility, but Defendant understandably wishes to be able to visit him and assist with his care.  (See id.)  Defendant's minor son has been suffering from suicidal thoughts and has been taking counseling classes at school. (See id. at 2.)  Defendant understandably believes that his own absence is contributing to his son's unhappiness.  (See id.)

10

Defendant's son is currently under the care of his mother.    (See id.)

As relevant here, section 1B1.13 explains that family circumstances can rise to the level of extraordinary and compelling where, with respect to a parent, the defendant's parent is incapacitated and the defendant would be the only available caregiver for the parent. See U.S.S.G. § 1B1.13(b)(3)(C). Similarly, with respect to a minor child, compassionate release may be available only where that child's caregiver has died or become incapacitated.  See U.S.S.G. § 1B1.13(b)(3)(A).  Neither situation is applicable here.

With respect to his father, Defendant does not argue that he is the only available caregiver.  Indeed, his father is in the care of a nursing home where he has been for some years. Understandably, the Defendant voices his wish to spend time with his father and assist in his care, but it is clear that even in Defendant's absence, his father is not uncared for, as is required by section 1B1.13.  The Court also notes that according to the Presentence Investigation Report, at the time of sentencing the Defendant had had no relationship with his father since he was eight years old.  (See dkt. no. 333 at 13.)

As to Defendant's minor son, again, it is understandable that Defendant wishes to spend time with him.  Again, however, in Defendant's absence, his minor son is not uncared for, as is

11

required by section 1B1.13.  Accordingly, neither argument made by
Defendant establishes extraordinary and compelling circumstances.

### c. 3553(a) Factors

Even if Defendant had established extraordinary and
compelling circumstances, the 3553(a) factors counsel against
early release.  As the Court noted at sentencing, Defendant's
offense was "exceedingly serious," and a lengthy sentence was
called for in light of the nature of the offense, to protect the
public, and to afford general deterrence.  (Dkt. no. 339 at 23.)
As noted above, Defendant was the leader of a dangerous drug gang
which distributed thousands of doses of various drugs which damaged
members of his community.  Members of Defendant's gang were
responsible for numerous acts of violence in his community and,
indeed, he gifted one of his co-conspirators an AR-15.

Defendant also indicates that he has not learned from his
prior convictions.  Before this conviction, Defendant suffered
multiple serious convictions for various drug and gun offenses but
returned to the street to continue those same crimes on a larger
scale.

Defendant does not seem to have learned even from this
conviction.  His record of misconduct in prison includes a January
2023 infraction for possession of a contraband cell phone, a
November 2021 infraction for fighting and possessing a hazardous
tool, and a January 2020 infraction for failure to comply with an

officer's order.  (Dkt. no. 606 at 6.)  For all of these reasons, the 3553(a) factors require that Defendant serve his entire 120-month sentence.

## IV.  <u>Conclusion</u>

For the reasons set forth above, Defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 573), is denied.

The Clerk of the Court shall close docket numbers 573, 600 and 610, and shall mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:    New York, New York
          August 12, 2025

_____
LORETTA A. PRESKA
Senior United States District Judge